IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

LYNDON 9309 LLC, §
§
Plaintiff, §
§    Civil Action No. 3:24-CV-1522-D
VS. §
§
FIDELITY NATIONAL TITLE §
INSURANCE COMPANY, §
§
Defendant. §

MEMORANDUM OPINION
AND ORDER

In this removed action, plaintiff Lyndon 9309, LLC ("Lyndon") seeks to recover for breach of contract and on related claims arising from defendant Fidelity National Title Insurance Company's ("Fidelity's") denial of Lyndon's claim under a title insurance policy. Fidelity moves for summary judgment,[1] and Lyndon cross-moves for partial summary judgment. Although the court does not suggest that Lyndon is without recourse against the proper party, it holds for the reasons explained that Lyndon cannot at this time recover against Fidelity under the terms of the policy because Lyndon has failed to produce sufficient evidence to create a genuine issue of material fact on the question of policy coverage. The court therefore grants Fidelity's motion, denies Lyndon's cross-motion, and dismisses this action with prejudice.

---

[1]Fidelity entitles its motion a "traditional and no-evidence motion for summary judgment." While not inaccurate as such, these labels appear to be used more appropriately in Texas state practice.

I

This case involves an easement on real property located at 9309 Lyndon B. Johnson Freeway #10 in Dallas, known as the Pinyon Tree Apartment Complex (the "Property").[2] In 1983 the owner of the Property and the owner of Lot 2-C, the adjacent property ("Lot 2-C"), negotiated a non-exclusive ingress-and-egress easement agreement ("Easement") that was recorded in the Real Property Records of Dallas County, Texas.

In 2009 the Texas Department of Transportation ("TxDOT") obtained from the owner of Lot 2-C a right of way deed ("TxDOT Deed") recorded on March 19, 2009 in the Dallas County Real Property Records. The conveyance from the owner of Lot 2-C to TxDOT included a section of the Easement, measuring approximately 44 feet by 17 feet, which was connected to the IH-635 service road. *See* the exhibit attached to this memorandum opinion and order, which is found at P. App. (ECF No. 35) at 16. The then owner of the Property did not execute the TxDOT Deed and did not otherwise convey an ownership interest in the Easement to TxDOT.

On May 27, 2020 Lyndon acquired the Property by a special warranty deed ("Warranty Deed") that included all easement rights appurtenant to the Property, including the Easement. In connection with the purchase, Lyndon obtained an Owners Policy of Title

---

[2]When both sides to a case move for summary judgment, the court recounts the evidence that is undisputed, and, when it is necessary to set out evidence that is contested, does so favorably to the side who is the summary judgment nonmovant in the context of that evidence. *See, e. g*., *GoForIt Ent., LLC v. DigiMedia.com L.P.*, 750 F.Supp.2d 712, 718 n.4 (N.D. Tex. 2010) (Fitzwater, C.J.) (quoting *AMX Corp. v. Pilote Films*, 2007 WL 1695120, at *1 n.2 (N.D. Tex. June 5, 2007) (Fitzwater, J.)).

Insurance ("Policy") issued by Fidelity. The Policy insured against several "Covered Risks," including "[a] defect in or lien or encumbrance on the Title [including] [a] defect in the Title caused by . . . [a]ny encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land" ("Covered Risk 2(c)"), and "[a]ny taking by a governmental body that has occurred and is binding on the rights of a purchaser for value without Knowledge" ("Covered Risk 8"). P. App. (ECF No. 35) at 22-23.

In 2021, acting pursuant to the TxDOT Deed, TxDOT commenced construction of a curb and sidewalk that blocked vehicular access across the Easement to the adjoining frontage road and resulted in the loss of eight parking spaces that Lyndon had previously been able to access via the Easement. Lyndon submitted a claim to Fidelity, asserting that the undisclosed TxDOT Deed had resulted in a compensable loss under the Policy. Fidelity denied coverage on the basis that Lyndon's "rights under the Insured Easement remain valid and enforceable, as the same were never compromised by the Seller of record," and that Lyndon's "interest in [the Property] remains vested in [Lyndon], as insured." *Id.* at 256. Fidelity agreed, however, under Policy Condition 5(b),[3] to retain counsel to represent Lyndon

_____

[3]Policy Condition 5(b) provides that Fidelity

> shall have the right . . . at its own cost, to institute and prosecute any action or proceeding or to do any other act that in its opinion may be necessary or desirable to establish the Title, as insured, or to prevent or reduce loss or damage to the Insured. [Fidelity] may take any appropriate action under the terms of this policy, whether or not it shall be liable to the Insured. The exercise of

for the purpose of "confirming the continued validity of the Insured Easement, as insured, and/or preventing or reducing loss or damage to [Lyndon]." *Id*.

Over the ensuing months, Lyndon's counsel pursued options for obtaining a cessation of TxDOT's obstruction of the Easement, or, alternatively, reasonable compensation for loss of use of the section of the Easement affected by the TxDOT Deed. Although TxDOT acknowledged that Lyndon's rights to the Easement continued after the transaction between the owner of Lot 2-C and TxDOT, TxDOT ultimately refused to remove the obstruction. When TxDOT also rejected Lyndon's pre-litigation settlement demand for $1.4 million,[4] Lyndon instructed counsel to file a lawsuit against TxDOT. Fidelity sent Lyndon a letter explaining, *inter alia*, that because "no title challenge, whether judicial or otherwise, has been raised," Fidelity had no obligation to indemnify or defend under the Policy. D. App. (ECF No. 31) at 83. Fidelity also asserted in the letter that it had no obligation to prosecute an action against TXDOT or otherwise provide an attorney for Lyndon's dispute with TXDOT over the value of the Easement and/or in relation to TXDOT's continuing interference with Lyndon's existing easement rights. *Id.*

—————————

these rights shall not be an admission of liability or waiver of any provision of this policy. If the Company exercises its rights under this subsection, it must do so diligently.

P. App. (ECF No. 35) at 33.

[4]According to Fidelity, in rejecting Lyndon's $1.4 million demand, TxDOT explained that this amount exceeded its budget and pre-litigation settlement authority, but that it was open to a demand under $100,000.

- 4 -

Lyndon eventually sued Fidelity in state court, asserting claims for breach of contract, violation of the Texas Insurance Code, and breach of the common law duty of good faith and fair dealing. Fidelity removed the case to this court and now moves for summary judgment. Lyndon opposes Fidelity's motion and cross-moves for partial summary judgment on liability for breach of the Policy, which Fidelity opposes. The court is now deciding both motions on the briefs, without oral argument.[5]

## II

When a party moves for summary judgment on a claim on which the opposing party will bear the burden of proof at trial, the moving party can meet its summary judgment obligation by pointing the court to the absence of admissible evidence to support the nonmovant's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party does so, the nonmovant must go beyond its pleadings and designate specific facts showing there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such that a reasonable jury could return a verdict in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmovant's failure to produce proof as to any essential element of a claim renders all other facts immaterial. *See TruGreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.).

---

[5]Also pending is Fidelity's motion to exclude expert testimony of Todd Rotholz, MAI. Because the court is dismissing this action with prejudice, it denies the motion to exclude expert testimony as moot.

Summary judgment is mandatory if the nonmovant fails to meet this burden. *Little*, 37 F.3d at 1076.

When the summary judgment movant will have the burden of proof on a claim or defense, however, the movant "must establish 'beyond peradventure all of the essential elements of the claim or defense.'" *Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 878 F. Supp. 943, 962 (N.D. Tex. 1995) (Fitzwater, J.) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)). This means that the movant must demonstrate that there are no genuine and material fact disputes and that the movant is entitled to judgment as a matter of law. *See Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). "The court has noted that the 'beyond peradventure' standard is 'heavy.'" *Carolina Cas. Ins. Co. v. Sowell*, 603 F.Supp.2d 914, 923-24 (N.D. Tex. 2009) (Fitzwater, C.J.) (quoting *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007) (Fitzwater, J.)).

III

The court begins with Fidelity's motion for summary judgment on Lyndon's breach of contract claim, which is based, in part, on the allegation that Fidelity breached the Policy by failing to indemnify Lyndon for its covered losses under multiple covered risks.

A

It is well-established under Texas law[6] that "[a]n insurer is liable only for losses covered by the policy." *Certain Underwriters at Lloyd's of London v. Lowen Valley View, L.L.C.*, 892 F.3d 167, 170 (5th Cir. 2018). "[T]he insured has the burden of establishing coverage under the terms of the policy." *JAW The Pointe, L.L.C. v. Lexington Ins. Co.*, 460 S.W.3d 597, 603 (Tex. 2015) (citing *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 124 (Tex. 2010)); *see also Seger v. Yorkshire Ins. Co.*, 503 S.W.3d 388, 400 (Tex. 2016) ("In any insurance action, '[a]n insured cannot recover under an insurance policy unless facts are pleaded and proved showing that damages are covered by his policy.'").

B

The court first considers whether a reasonable trier of fact could find that Lyndon sustained a loss or incurred damages "by reason of" Covered Risk 8: "[a]ny taking by a governmental body that has occurred and is binding on the rights of a purchaser for value without Knowledge." P. App. (ECF No. 35) at 23.

1

Fidelity contends in its motion that Covered Risk 8 does not apply because the TxDOT Deed did not alter or reduce Lyndon's record title in the Easement; Lyndon's

---

[6]Neither side disputes that Texas law controls under the Policy. *See* P. App. (ECF No. 35) at 34 ("[T]he court or an arbitrator shall apply the law of the jurisdiction where the Land is located to determine the validity of claims against the Title that are adverse to the Insured, and in interpreting and enforcing the terms of this policy.").

predecessor in title did not convey its interest in the Easement to TxDOT—TxDOT obtained its interest in the Easement *only* from the owner of Lot 2-C, and the owner of Lot 2-C could not convey any interest other than what he possessed at the time of the conveyance; and Lyndon acquired the interest in the Easement that its predecessor in title owned at the time the Warranty Deed was executed.

Lyndon responds that the "uncontroverted" facts show that the TxDOT Deed was a recorded taking that materially impacted Lyndon's Easement rights. P. Br. (ECF No. 37) at 8. It contends that

> [t]he physical obstruction of the [Easement] transcends a mere technical title issue. TxDOT's actions have effectively eliminated the practical utility of a substantial portion of the [Easement], directly causing a $450,000 economic loss. This is not a hypothetical diminishment of rights but a real, quantifiable destruction of property value that strikes at the very heart of title insurance's protective purpose.

*Id.* at 6 (footnote omitted). And it maintains that, even if Lyndon retains legal title to the Easement, Fidelity's interpretation of the Policy creates meaningless protection that fails to address the real-world economic impact of a title defect.

2

Texas courts interpret insurance policies according to the rules of contract interpretation. *See Int'l Ins. Co. v. RSR Corp.*, 426 F.3d 281, 291 (5th Cir. 2005) (citing *Kelley-Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 464 (Tex. 1998)); *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex. 1994) ("Interpretation of insurance contracts in Texas is governed by the same rules as the interpretation of other contracts."). When a

"contract is worded so that it can be given a definite meaning, it is unambiguous and a judge must construe it as a matter of law." *Int'l Ins. Co.*, 426 F.3d at 291; *see also Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex. 1991). "In applying these rules, a court's primary concern is to ascertain the parties' intent as expressed in the language of the policy." *Int'l Ins. Co.*, 426 F.3d at 291; *see also Forbau*, 876 S.W.2d at 133 ("[T]he court's primary concern is to give effect to the written expression of the parties' intent."). The court must give effect to all of a policy's provisions so that none is rendered meaningless. *Int'l Ins. Co.*, 426 F.3d at 291. "In addition, courts 'look to the plain and ordinary meaning of the language used in the policy unless another meaning is clearly apparent from the contents of the policy.'" *Klein v. Fed. Ins. Co.*, 220 F.Supp.3d 747, 762 (N.D. Tex. 2016) (Fitzwater, J.) (citation omitted), *aff'd*, 714 Fed. Appx. 441 (5th Cir. 2018).

The court begins with the language of the Policy. Covered Risk 8 provides coverage for "[a]ny taking by a governmental body *that has occurred*" as of June 8, 2020. P. App. (ECF No. 35) at 23 (emphasis added).[7] Even if, as Lyndon argues, TxDOT's obstruction of the Easement in 2021 constitutes a governmental "taking," as that term is used in the Policy, Lyndon has not adduced any evidence that a governmental taking "ha[d] occurred" as of June

---

[7]The Policy provides that "[Fidelity] insures, *as of Date of Policy*, and, to the extent stated in Covered Risks 9 and 10, after Date of Policy, against loss or damage . . . sustained or incurred by the insured by reason of [the Covered Risks]." P. App. (ECF No. 35) at 22 (emphasis added). It defines "Date of Policy" as the date designated in Schedule A, which provides that the "Date of Policy" is June 8, 2020.

8, 2020, the date of the policy.  The Policy, by its terms, does not insure against *future*[8]

takings; it insures only against takings that "ha[ve] occurred."

Lyndon maintains, in its own motion for summary judgment:[9]

> [t]he fact that TxDOT did not physically obstruct the Easement
> until after the Policy date is irrelevant.  The TxDOT Deed
> itself—which was recorded and in existence at the time of the
> Policy—created the encumbrance on Lyndon's title by granting
> TxDOT the legal right to obstruct the Easement.  The physical
> obstruction was merely the manifestation of the pre-existing title
> defect.

P. Br. (ECF No. 33) at 11-12.  The court will assume *arguendo* that the TxDOT Deed granted

TxDOT the legal right to obstruct the Easement, as Lyndon contends.  Even so, Lyndon

cannot establish coverage under Covered Risk 8 because this provision refers only to a

"taking by a governmental body."  P. App. (ECF No. 35) at 23.  The legal right to obstruct

the Easement at some unknown time in the future is not a "taking" under Texas law.  *See,*

*e.g.*, *Tarrant Reg'l Water Dist. v. Gragg*, 151 S.W.3d 546, 554 (Tex. 2004) ("A physical

taking may occur when the government physically appropriates or invades private property,

or unreasonably interferes with the landowner's right to use and enjoy it."); *Town Park Ctr.,*

*LLC v. City of Sealy*, 639 S.W.3d 170, 192 (Tex. App. 2021, no pet.) ("A taking may be

---

[8]The Policy does provide coverage for future events, as described in Covered Risks 9 and 10.  But Covered Risk 8 is limited to government takings that have already occurred as of the Date of the Policy.  *See supra* note 7.

[9]Lyndon does not incorporate its own motion for summary judgment into its response to Fidelity's motion.  But because doing so does not change the outcome, the court will consider Lyndon's argument as if it had been properly raised in its response brief.

either physical or regulatory. A physical taking is an unwarranted physical appropriation or invasion of the property. A regulatory taking can occur when a governmental agency imposes restrictions that either deny a property owner all economically viable use of its property or that unreasonably interfere with the owner's right to use and enjoy the property." (citations omitted)).

Lyndon has not produced any evidence that would permit a reasonable trier of fact to find that a "taking by a governmental body" had occurred by June 8, 2020. Accordingly, the court holds that any damages Lyndon sustained as a result of the TxDOT Deed are not covered under Covered Risk 8.

C

Nor has Lyndon met its burden to establish coverage under Covered Risk 2(c), which insures against "[a]ny defect in or lien or encumbrance on the Title," including "[a] defect in the Title caused by . . . [a]ny encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land," or Covered Risk 7, which insures against loss or damage from "[t]he exercise of the rights of eminent domain if a notice of the exercise . . . is recorded in the Public Records." P. App. (ECF No. 35) at 22.

Fidelity maintains in its motion for summary judgment that Covered Risk 2(c) does not apply because TxDOT did not begin construction on the service road expansion and encroach upon Lyndon's Easement until *after* Lyndon acquired the Property, and, accordingly, there was no visible encroachment at the time the Policy was issued. It contends

- 11 -

that Covered Risk 7 does not apply because the TxDOT Deed was a voluntary conveyance, not an acquisition by eminent domain.  Lyndon does not respond to either of these arguments.

Although Lyndon's failure to respond does not permit the court to enter a "default" summary judgment, *see, e.g.*, *Tutton v. Garland Independent School District*, 733 F. Supp. 1113, 1117 (N.D. Tex. 1990) (Fitzwater, J.), "[a] summary judgment nonmovant who does not respond to the motion is relegated to [its] unsworn pleadings, which do not constitute summary judgment evidence," *Bookman v. Shubzda*, 945 F. Supp. 999, 1002 (N.D. Tex. 1996) (Fitzwater, J.) (citing *Solo Serve Corp. v. Westowne Assocs*., 929 F.2d 160, 165 (5th Cir. 1991)).  Moreover, "[i]f a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . (2) consider the fact undisputed for purposes of the motion [and] (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it[.]"  Rule 56(e)(2)-(3).

Lyndon has not designated specific evidence sufficient to create a genuine fact issue on the question whether there was an "encroachment, encumbrance, violation, variation, or adverse circumstance *affecting the Title*,"[10] or the exercise of the rights of eminent domain.

---

[10]Lyndon argues, in its own motion for summary judgment, that the TxDOT Deed "created a right or interest in Lyndon's easement rights that substantially interfered with their free enjoyment" by authorizing TxDOT to construct improvements within the right-of-way that physically prevented Lyndon from using the Easement for its intended purpose of vehicular access to the frontage road.  P. Br. (ECF No. 33) at 10.  But as with Lyndon's argument under Covered Risk 8, Lyndon has failed to present evidence that would enable a

- 12 -

Accordingly, the court holds that any damages Lyndon sustained as a result of the TxDOT Deed are not covered under Covered Risks 2(c) or 7.

D

Lyndon posits in its response brief that it has suffered a $450,000 loss directly attributable to the undisclosed TxDOT Deed and that Fidelity breached the Policy by failing to "provide meaningful protection against title defects that materially impact property value and utility." P. Br. (ECF No. 37) at 8. It cites *McGonagle v. Stewart Title Guaranty Co.*, 432 S.W.3d 535 (Tex. App. 2014, pet denied), for the proposition that "an 'irregularity that merely affects the value of the land,' can constitute a compensable title defect." P. Br. (ECF No. 37) at 6. The court disagrees.

In *McGonagle* the Texas Court of Appeals actually stated:

> A title insurance policy is a contract of indemnity that imposes a duty on the insurance company to indemnify the insured against losses caused by defects in title. The alleged defect must involve a flaw in the ownership rights of the property to trigger coverage. An irregularity that merely affects the value of the land, but not the ownership rights, *is not a defect in title*.

*McGonagle*, 432 S.W.3d at 540 (emphasis added) (citations omitted). In the present case, as in *McGonagle*, Lyndon points to an alleged "irregularity" that affects the value of its real property, but fails to adduce any evidence (or even argue) that the TxDOT Deed affected its

---

reasonable trier of fact to find that the *TxDOT Deed*, as opposed to TxDOT's later decision to construct the obstruction, caused a defect in Lyndon's title or in any way affected its rights under the Easement. Lyndon has not shown that there was any encroachment on the Property as a result of the TxDOT Deed as of the Policy date.

- 13 -

ownership rights in the Property or otherwise resulted in a defect in its title.

Lyndon also contends in its response brief that Fidelity breached the Policy by "fail[ing] to disclose [the TxDOT Deed] in the Policy, a[n] omission that directly resulted in a $450,000 diminution of the Property's value." P. Br. (ECF No. 37) at 8. But Lyndon fails to identify any Policy provision that required Fidelity to disclose the TxDOT Deed. *See, e.g.*, *Holman-Farrar Holdings, LLC v. Old Republic Nat'l Title Ins. Co.*, 2024 WL 5355594, at *4 (W.D. Tex. Oct. 11, 2024) ("[T]o the extent that the breach of contract claim relies on a duty to disclose, that theory is foreclosed by the Policy" because plaintiff "points to no provision in the Policy that puts an obligation on Old Republic to discover and disclose the Recorded Instruments.").[11] Accordingly, to the extent that Lyndon bases its breach of contract claim on allegations that Fidelity breached the Policy by "failing to discover and disclose the recorded Taking that affects the Title," Am. Compl. (ECF No. 15) ¶ 17, "failing to disclose an adverse circumstance affecting the Title that would have been revealed by an accurate and complete land survey," *id.*, and "failing to identify and disclose the recorded exercise of eminent domain rights," *id.*, the court grants Fidelity's motion for summary judgment.

---

[11]Nor would the identification or disclosure of the TxDOT Deed be required under Texas law. *See, e.g.*, *Hahn v. Love*, 394 S.W.3d 14, 35 (Tex. App. 2012, pet. denied) ("[T]he only duty imposed by a title insurance policy is the duty to indemnify the insured against losses caused by defects in title."); *Martinka v. Commonwealth Land Title Ins. Co.*, 836 S.W.2d 773, 777 (Tex. App. 1992, writ denied) ("A title insurance company is not a title abstractor and owes no duty to examine a title" or "point out any outstanding encumbrances.").

E

Lyndon has not carried its burden to create a genuine issue of material fact on the question whether it suffered a covered loss under the unambiguous terms of the Policy. Accordingly, the court grants Fidelity's motion for summary judgment on Lyndon's breach of contract claim to the extent that it is based on Fidelity's alleged failure to indemnify Lyndon or failure to disclose the TxDOT Deed.

IV

The court now turns to Fidelity's motion for summary judgment on the remainder of Lyndon's breach of contract claim and on Lyndon's claims for violation of the Texas Insurance Code and breach of the duty of good faith and fair dealing.

A

The court begins with Lyndon's remaining contract claims, which are based on allegations that Fidelity failed to "defend or pursue Lyndon's rights regarding the Taking," and failed to make reasonable settlement offers. *Id.*

Fidelity argues that it complied with the terms of the Policy in administering Lyndon's insurance claim. It contends that, pursuant to its obligations under the Policy, it timely acknowledged Lyndon's claim, diligently investigated, issued a coverage determination under Policy Condition 5(b), elected to retain outside counsel for the purposes of completing a diligent investigation, and assisted in finding a solution to the TxDOT encroachment; that retained counsel for Lyndon communicated with TxDOT to obtain information regarding TxDOT's position on Lyndon's continued ownership of the Easement and attempted to

- 15 -

mitigate the encroachment through removal or compensation; that these efforts produced a potential settlement opportunity, which Lyndon rejected; and that no provision in the Policy specifically obligated Fidelity to indemnify Lyndon for losses or damages not covered under the terms of the Policy. Lyndon has not responded to this ground of Fidelity's motion other than by arguing that the TxDOT Deed "falls squarely within the policy's covered risks." P. Br. (ECF No. 37) at 5.

The court has already held that Lyndon has not raised a genuine issue of material fact on the issue of coverage. Because Lyndon neither argues nor adduces evidence that would enable a reasonable trier of fact to find that Fidelity otherwise breached the Policy, the court grants Fidelity's motion for summary judgment on the remainder of Lyndon's breach of contract claim.

B

The court next turns to Lyndon's claims under the Texas Insurance Code[12] and for

---

[12]Lyndon alleges that Fidelity engaged in unfair and deceptive acts or practices, in violation of Texas Insurance Code Ann. §§ 541.051 and 541.060 (West 2022), by "(i) misrepresenting the terms and coverage of the Policy; (ii) failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement when liability became reasonably clear; (iii) failing to promptly provide a reasonable explanation for denial of the claim; and (iv) refusing to pay the claim without conducting a reasonable investigation." Am. Compl. (ECF No. 15) ¶ 20. Lyndon alleges that Fidelity engaged in unfair claim settlement practices, in violation of Texas Insurance Code § 542.003, by "(i) failing to adopt and implement reasonable standards for claim investigation; (ii) not attempting in good faith to effect prompt and fair settlement of claims where liability is reasonably clear; and (iii) compelling policyholders to institute litigation to recover amounts due by offering substantially less than amounts ultimately recovered." *Id.* ¶ 21.

- 16 -

breach of the duty of god faith and fair dealing.[13]  Fidelity moves for summary judgement on these claims, *inter alia*, on the ground that Lyndon's insurance claim was not covered under the terms of the Policy.  Lyndon has failed to respond to this ground of Fidelity's motion.

Under Texas law, "[w]hen the issue of coverage is resolved in the insurer's favor, extra-contractual claims do not survive."  *State Farm Lloyds v. Page*, 315 S.W.3d 525, 532 (Tex. 2010) (citing *Progressive Cnty. Mut. Ins. Co. v. Boyd*, 177 S.W.3d 919, 921 (Tex. 2005) (per curiam)).  This principle applies to alleged violations of the Texas Insurance Code and the common law duty of good faith and fair dealing.  *See USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 490 (Tex. 2018) ("The general rule is that an insured cannot recover policy benefits for an insurer's statutory violation if the insured does not have a right to those benefits under the policy."); *see also Hamilton Props. v. Am. Ins. Co.*, 643 Fed. Appx. 437, 442 (5th Cir. 2016) (per curium) (explaining that plaintiff cannot prevail on "extra-contractual claims for violation of the Texas Deceptive Trade Practices Act, Sections 541 and 542 of the Texas Insurance Code, and the duty of good faith and fair dealing" absent a showing that an insurer breached its contract with the insured); *Meisenheimer v. Safeco Ins. Co. of Ind.*, 2018 WL 3869573, at *3-4 (N.D. Tex. Aug. 15, 2018) (Lynn, C.J.) (explaining that if the insurer did not breach its contract with the insured, the insured could not maintain extracontractual claims for breach of the duty of good faith and fair dealing or violations of

---

[13]Lyndon alleges that Fidelity breached the duty of good faith and fair dealing by "(i) failing to reasonably investigate the claim; (ii) denying coverage when liability was reasonably clear; (iii) failing to make reasonable settlement offers; [and] (iv) forcing Lyndon to initiate litigation to recover policy benefits."  Am. Compl. (ECF No. 15) ¶ 23.

the Texas Insurance Code and the DTPA without establishing an independent injury).

Courts recognize an exception to the general rule, however, when the insurer commits an act, so extreme, that it causes injury independent of the policy claim. Under this exception, a plaintiff may recover damages inflicted by a statutory violation "only if the damages are truly independent of the insured's right to receive policy benefits," and not "predicated on [the loss] being covered under the insurance policy." *Menchaca*, 545 S.W.3d at 499-500 (alteration in original) (quoting *Boyd*, 177 S.W.3d at 920); *see also In re State Farm Mut. Auto. Ins. Co.*, 629 S.W.3d 866, 874 (Tex. 2021) ("In other words, to recover under an independent-injury theory, the insureds must establish that State Farm's statutory violations caused an injury apart from State Farm's failure to pay as much as the insureds believe they should have been paid under their [] policies.").

Lyndon neither argues nor adduces any evidence that it has suffered an independent injury. The court therefore holds that Fidelity is entitled to summary judgment dismissing Lyndon's extracontractual claims for violation of the Texas Insurance Code and breach of the common law duties of good faith and fair dealing.

V

Because the court is granting defendant's motion for summary judgment on all of Lyndon's claims, it holds that Lyndon has not carried its burden to establish beyond peradventure all of the essential elements of these claims. Accordingly, the court denies Lyndon's cross-motion for partial summary judgment.

- 18 -

* * *

For the reasons explained, the court grants Fidelity's motion for summary judgment,

denies Lyndon's cross-motion for partial summary judgment, and enters judgment in favor

of Fidelity dismissing this action with prejudice.

**SO ORDERED**.

September 25, 2025.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE

- 19 -

